Gregory C. **RAGLAND,** Appellant–
Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 48A04–9604–CR–148.

Court of Appeals of Indiana.

Aug. 21, 1996.

Montague M. Oliver, Jr., Anderson, for Appellant.

Pamela Carter, Attorney General of Indiana, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

### OPINION

DARDEN, Judge.

#### STATEMENT OF THE CASE

Gregory Ragland appeals the trial court's imposition of consecutive sentences after Ragland pleaded guilty to two counts of dealing in cocaine, a class B felony. We affirm.

#### ISSUE

Whether the trial court erred in imposing consecutive sentences.

#### FACTS

On March 22, 1994, a confidential informant contacted Anderson Police Department Detective Faust and stated that a cocaine purchase from 36 year-old Gregory Ragland was possible. The informant was given drug buy money and purchased .17 grams of cocaine from Ragland. On March 28, 1994, the same confidential informant contacted Anderson Police Department Lieutenant Yeskie and again stated that a cocaine purchase

from Ragland was possible. The informant was given drug buy money and purchased another .17 grams of cocaine from Ragland. On December 21, 1994, Ragland was charged with two counts of dealing in cocaine within 1,000 feet of school property, a class A felony.[1]

Ragland and the prosecutor subsequently entered into a plea agreement which provided that Ragland would plead guilty to two counts of dealing in cocaine, a class B felony and would receive no more than 15 years executed per count. Further, the parties would be permitted to argue as to consecutive or concurrent sentencing.[2]

During the June 26, 1995, guilty plea hearing, the trial court repeatedly questioned Ragland to determine whether his plea was knowing and voluntary. The court further questioned Ragland to be sure that he understood the sentencing possibilities that the agreement left open. Specifically, the record reveals as follows:

TRIAL COURT: Now the range of penalties for this is as follows: It's six (6) years to twenty (20) years; however, the State has agreed that the maximum executed time you can receive is fifteen (15) years.

RAGLAND: Yes sir. I understand.

TRIAL COURT: Now that's on both Counts I and II. So the minimum is six (6) years. The maximum is thirty (30) years, executed....

RAGLAND: Yes I understand.

\*    \*    \*    \*    \*    \*

TRIAL COURT: The plea agreement is you would get a maximum of fifteen (15) years executed on each count. The State can argue for a time up to and including fifteen (15) years and they can also argue for ... for consecutive time and ... and the ... the defense is free to argue for something less, although we all know the minimum is six (6). You have to get six (6)

---

1. The confidential informant bought the cocaine at Ragland's apartment, which was 75 feet from Anderson High School.

2. Although the record does not contain a copy of the plea agreement, the parties do not dispute the agreement's terms.

because you have prior felonies.[3]

(R. 98, 104–05).

At the August 16, 1995, sentencing hearing, the trial court sentenced Ragland to 15 years on each count, sentences to run consecutively. In support of the sentence, the trial court stated in pertinent part is as follows:

> TRIAL COURT: [I]f he'd been found guilty of the two (2) A felonies, I don't know about me but some Judge can give him ninety (90) years and not crack a smile. With ... twelve (12) convictions and four (4) felonies. The reality of it is that both sides got a good deal. The State was having trouble with their witness and Mr. Ragland avoided a draconian life sentence is what it amounts to.
>
> \*   \*   \*   \*   \*   \*
>
> The court finds as aggravating circumstances that any lesser, uh, offense would depreciate the seriousness of the crime. You dealt cocaine across the street from a public school, your school. That's the school you went to of all things. That the defendant was on probation and was on bond from two (2) separate offenses when he ... committed this offense. The defendant has an extensive criminal record and he has been given opportunities of probation and he's even been sent to ... [c]hemical dependency evaluation.... I don't know of anything else that we could have done, Mr. Ragland, to try to help you. And I'm sorry and it's true you're suffering and your mom's suffering and your kids are suffering and your grandkids are suffering but it has to stop....

(R. 144, 151–52).

### DECISION

Ragland argues that the trial court erred in imposing consecutive sentences. Specifically, Ragland contends that consecutive sentences are improper for multiple sales of a single drug to one informant. In support of his argument, Ragland directs us to *Beno v. State*, 581 N.E.2d 922 (Ind.1991), wherein Beno sold cocaine to the same confidential informant on April 14 and April 18. The weight of the cocaine in the first sale

was 3.1 grams and the weight in the second sale was 2.9 grams. A jury convicted Beno of 1) dealing in cocaine in an amount over three grams, a class A felony, 2) dealing in cocaine in an amount under three grams, a class B felony, and 3) maintaining a common nuisance, a class D felony. The trial court sentenced Beno to the maximum penalty on each charge—50 years, 20 years, and 4 years respectively. Further, the court ordered the sentences to be served consecutively, for a total of 74 years.

On appeal, this court affirmed the judgment and sentences. Our supreme court granted transfer and ordered the terms of imprisonment to be served concurrently, for a term of 50 years. The court further stated as follows:

> Beno was convicted of committing virtually identical crimes separated by only four days. Most importantly, the crimes were committed as the result of a police sting operation. As a result of that operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation.

*Id.* at 924.

Ragland directs us to the foregoing language and argues that the facts in his case are so nearly identical to the facts in *Beno* that he deserves a similar result. Specifically, Ragland contends that his sentences should be corrected to run concurrently rather than consecutively.

In response, the State directs us to *Howard v. State*, 626 N.E.2d 574 (Ind.Ct.App. 1993), *trans. denied*, wherein Howard sold marijuana to a single confidential informant on four different occasions between October 19, 1989 and November 21, 1989. Each sale

---

**3.** Ragland had 12 prior convictions, four of   which were felonies.

involved marijuana in excess of 30 grams. Howard was charged under four separate cause numbers with 1) dealing in marijuana, a class D felony, 2) possession of marijuana, a class D felony, and 3) maintaining a common nuisance, a class D felony, for a total of twelve counts. Under the terms of a plea agreement, Howard pleaded guilty to the three dealing counts and the remaining counts were dismissed. Further, the plea agreement gave the trial court the discretion to order concurrent or consecutive sentences. After conducting a hearing, the trial court sentenced Howard to three years on each count, sentences to run consecutively.

On appeal, Howard, like Ragland, directed us to *Beno*, and argued that because the facts of his case were nearly identical to those in *Beno*, his sentences should be corrected to run concurrently rather than consecutively. We disagreed and distinguished the facts of Howard's case to those in *Beno*.

First, Beno was sentenced after a jury trial, and Howard was sentenced after pleading guilty pursuant to an agreement which provided that the court had discretion to order concurrent or consecutive sentences. Further, in *Beno*, the trial court ordered the sentence to be served consecutively in order to make Beno an example for other drug dealers. In response, our supreme court noted as follows:

> We recognize that one of the many goals of penal sentencing is its deterrent effect. We do not believe, however, that a trial judge should be allowed to use the sentencing process as a method of sending a personal philosophical or political message.

A trial judge's desire to send a message is not a proper reason to aggravate a sentence.[4]

*Id.* In *Howard*, we found that the record did not support the notion that the trial court imposed consecutive sentences in order to send a message. Rather, the record showed that the court considered numerous factors, including the multitude of the individual sales, the magnitude of the operation and Howard's criminal activity and past criminal record.

In addition, we noted that when a trial court exercises its discretion to enhance a presumptive sentence, orders sentences to be served consecutively, or both, the record must identify relevant factors underlying the decision. *Id.* at 576–77. In *Howard*, the record identified the relevant factors considered by the trial court in ordering Howard's sentences to be served consecutively. Lastly, we observed that Howard's nine year sentence was considerably less than Beno's 74 year sentence. We could not say as a matter of law that no reasonable person could find Howard's nine year sentence for dealing in marijuana inappropriate to the offense and the offender. Therefore, we affirmed Howard's consecutive sentences.

■ We agree with the State that the facts before us are analogous to those in *Howard*, and can be distinguished from those in *Beno*. First, Ragland, like Howard, was sentenced after pleading guilty pursuant to an agreement which provided that the court had discretion to order concurrent or consecutive sentences.[5] Further, before accepting Ragland's plea and passing sentence, the tri-

4. The *Beno* trial court stated in pertinent part as follows:

Here in our Country and across the Country I don't think there can be any doubt ... Mr. Beno that dealing in cocaine and the use of cocaine ... destroys the very fabric our Country's made of, whether you deal it to a friend or deal it to somebody you don't know.... [E]verybody knows that dealing in cocaine is just about as bad as you can get.... I'm really surprised at the ease the testimony revealed. You go to somebody's house and in a very short period of time bring back the cocaine to somebody that you thought was your friend. That tells me something about your character, your ability to understand the danger to every-

body that you uh presented. I don't see anything at all wrong with sending a very clear message to every person in the State that somewhere along the line the buck's gotta stop and it's gotta stop right here at this bench. *Beno*, 581 N.E.2d at 923.

5. A plea agreement is in the nature of a contract. *Bezy v. Loftus*, 581 N.E.2d 965, 968 (Ind.Ct.App. 1991). Both the State and the defendant bargain for and receive substantial benefits from the agreement. *Id.* Here, pursuant to the terms of the plea agreement, Ragland's two class A felonies were reduced to class B felonies. Further, the agreement provided that Ragland would not be exposed to the maximum penalty for a class B felony.

al court questioned Ragland to be sure that he understood the sentence and terms of the plea agreement, including the sentencing possibilities that the agreement left open.[6] In addition, as in *Howard,* the record does not support the notion that the trial court imposed consecutive sentences in order to send a message. Rather, the record reveals that the court considered numerous factors, including Ragland's extensive criminal record and that Ragland was on probation when he committed the dealing offenses.

Lastly, Ragland's 30 year sentence, like Howard's sentence, is considerably less than Beno's 74 year maximum sentence. We cannot say as a matter of law that no reasonable person could find Ragland's sentence inappropriate to the offense and the offender. We further note that, as the trial court pointed out, if Ragland had been found guilty of the two A felonies, he possibly could have received 90 years, and if he had been found guilty of one of the A felonies, he could have received 45 years, both of which are considerably longer than the 30 years he received pursuant to the terms of the plea agreement.

Based on the facts and circumstances before us, we cannot say that the trial court erred in imposing consecutive sentences.

Affirmed.

GARRARD, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. In *Gregory v. State,* 644 N.E.2d 543 (Ind.1994) our Supreme Court reaffirmed its decision in *Beno v. State,* 581 N.E.2d 922 (Ind.1991) by saying that the court has held "consecutive sentences manifestly unreasonable where the state sponsors a series of offenses in a sting operation." As in *Beno,* Gregory sold the same drug to the same informant on several occasions over a short period. In the instant case, Ragland sold the same drug to the same informant within a six day period. It seems quite clear to me that our Supreme Court has held that in these circumstances consecutive sentences are manifestly unreasonable.

The majority opinion tries to distinguish this case by saying that because the written plea agreement contained an express provision allowing the parties to argue for consecutive or concurrent sentences, *Beno* is inapplicable. First, as pointed out by Judge Baker in his dissenting opinion in *Howard v. State,* 626 N.E.2d 574 (Ind.Ct.App.1993), *trans. denied,* this issue was partially addressed in *Woodard v. State,* 609 N.E.2d 1185 (Ind.Ct.App.1993), *trans. denied,* wherein we applied *Beno* and declared the sentence manifestly unreasonable even though the sentence followed a guilty plea rather than a jury trial. Woodard pled guilty to five counts of dealing in cocaine and was sentenced to five consecutive fifteen-year sentences. The court relied on the *Beno* decision and held that "the police sting involving multiple buys to the same individual on consecutive days does not permit the same conclusion as to each sentence being served consecutively." The court held the sentences for dealing cocaine to the same individual on different days was manifestly unreasonable and ordered the sentences served concurrently.

Here, Ragland pled guilty pursuant to a written plea agreement which provided that Ragland would receive no more than 15 years executed on each count, and the parties would be permitted to argue for consecutive or concurrent sentences. The fact that this sentence was imposed within the restrictions contained in the plea agreement, does not mean that the sentence cannot be deemed erroneous if it is manifestly unreasonable.

The majority opinion would seem to allow defendants to enter plea agreements that permit the trial court to have the discretion to order manifestly unreasonable sentences. The purpose of *Beno* and its progeny is to prevent the State "from conducting any number of additional buys and thereby hook [the defendant] for additional crimes with each subsequent sale." *Beno,* 581 N.E.2d at 924. The majority opinion is merely attempting to circumvent the intent of *Beno* by allowing

---

**6.** The trial court also repeatedly questioned Ragland to determine whether his plea was knowing and voluntary. Further, Ragland has not challenged the voluntariness of his plea.

the defendant to enter a plea agreement that leaves the sentencing to the discretion of the trial court. The fact remains that consecutive sentencing for drug stings is manifestly unreasonable whether the defendant is found guilty at trial or enters a plea agreement. I do not believe this was the intent of our supreme court.

Considering Ragland's lengthy criminal history, I would affirm the trial court's imposition of the maximum sentence permitted by the plea agreement, but would reverse the imposition of consecutive sentences and order the sentences to be served concurrently.